

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/22/2021

| | | |
|---|---|---|
| IN RE: | § | |
| **CLEAR THE AIR, LLC,** | § | **CASE NO: 19-32939** |
| Debtor. | § | |
| | § | **CHAPTER 11** |
| | § | |
| _____ | § | |
| **MLN COMPANY,** | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-3508** |
| | § | |
| **CLEAR THE AIR, LLC** | § | |
| and | § | |
| **CTA HVAC, LLC** | § | |
| and | § | |
| **DAWN STOM,** | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Defendants Clear The Air, LLC, CTA HVAC, LLC, and Dawn Stom seek summary judgment against MLN Company on two grounds: (1) MLN Company's fraudulent transfer claims belong exclusively to Clear The Air, LLC 's bankruptcy estate and thus only Clear The Air, LLC can prosecute such derivative claims; and (2) MLN Company's trust fund violation claim should be delt with in the claims allowance process.  On June 3, 2021, the Court held a hearing and for the reasons stated herein, Defendants' motion for summary judgment is denied.

### I.  Procedural History

1.  On May 29, 2019, Clear The Air, LLC ("*Debtor*" or "*Clear The Air*"). filed a chapter 11 petition.[1]

2.  On May 29, 2019, Clear The Air, CTA HVAC, LLC ("*CTA*"), and Dawn Stom, ("*Ms. Stom*") (collectively "*Defendants*") removed to this Court the following cause of action:

---

[1] Citations to the docket in this adversary proceeding styled MLN Company *vs. Clear The Air, LLC, CTA HVAC, LLC & Dona Stom,* 19-3508 (the "*Adversary Proceeding*"), shall take the form "ECF No. ——," while citations to the bankruptcy case, 19-32939 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. ——."  Bankr. ECF No. 1.

*MLN Company vs. Clear the Air, LLC, CTA HVAC, LLC and Dawn Stom*, Cause No. 2019-32227 in the 127th Judicial District Court of Harris County, Texas ("*State Court Action*").[2]

3.  On September 29, 2019, Debtor filed a chapter 11 plan ("*Plan*") that includes an agreement whereby CTA proposes to fund the Plan, paying Debtor's creditors at least $72,000.[3]

4.  On October 13, 2019, MLN Company ("*MLN*" or "*Plaintiff*") filed its first amended complaint.[4]

5.  On October 19, 2019, MLN filed its general unsecured proof of claim in the amount of $60,775.69.[5]

6.  On December 2, 2019, Defendants filed a motion to dismiss the instant adversary proceeding based, inter alia, on standing.  That motion was heard and denied on February 11, 2020 but required Plaintiff to amend its complaint no later than February 25, 2020.[6]

7.  On February 25, 2020, in its second amended complaint ("*Second Amended Complaint*"),[7] Plaintiff asserted the following causes of action, to wit:

    a.  Cause I – Actual Fraudulent Transfer under § 548(a)(1)(A) as to all Defendants;
    b.  Cause II – Constructive Fraudulent Transfer under § 548(a)(1)(B) as to all Defendants;
    c.  Cause III – Violation of the Texas Uniform Fraudulent Transfer Act as to all Defendants;
    d.  Cause IV – Conspiracy as to all Defendants;
    e.  Cause V – Piercing the Corporate Veil as to CTA only;
    f.  Cause VI – Trust Fund Violation as to Clear The Air only.

8.  On March 27, 2020, Defendants filed their respective answers to the Second Amended Complaint.[8]

9.  On May 28, 2020, the Court issued its Scheduling Order.[9]

10. On July 1, 2020, Clear The Air filed its Notice of Consent to the entry of final orders on all non-core matters by this Court.[10]

---

[2] ECF No. 1.
[3] *See* Bankr. ECF No. 29, at 3. (1. Generally, under the terms of the Plan, the Agreement is ratified, CTA will pay the administrative expenses of this Chapter 11 case and $50,000 to Clear the Air's unsecured creditors in full satisfaction of the potential preference action against Mrs. Stom and the purported fraudulent transfer. Further, any amount collected on Clear the Air's accounts receivable will distributed to Clear the Air's unsecured creditors.)
[4] ECF No. 6.
[5] Bankr. Claim No. 16.
[6] ECF No. 26.
[7] ECF No. 28.
[8] ECF Nos. 29, 30.
[9] ECF No. 36.
[10] ECF No. 41.

11. On July 10, 2020, CTA and Stom filed their Notices of Consent to the entry of final orders on all non-core matters by this Court.[11]

12. On July 14, 2020, MLN filed its Notice of Consent to the entry of final orders on all non-core matters by this Court.[12]

13. On January 15, 2021, Defendants timely filed their Motion for Summary Judgment ("*Motion*").[13]

14. On February 15, 2021, Plaintiff timely filed its response to the Motion ("*Response*").[14]

15. On June 3, 2021, the Court held a hearing ("*Hearing*").

## II.   Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[15]   While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings.[16]   Here, all parties have filed their notices of consent to the entry of final orders by this Court.   Nevertheless, this Court may issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.[17]   The Court's order does not end the action as to any of the claims or parties, and is thus interlocutory.   Finally, venue is governed by 28 U.S.C. §§ 1408, 1409.   Venue is proper because the Court is currently presiding over Clear The Air's bankruptcy.[18]

---

[11] ECF No. 42.
[12] ECF No. 43.
[13] ECF No. 46.
[14] ECF No. 48.
[15] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[16] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[17] *In re ATOM Instrument Corp.*, 478 B.R. 252, 255 (Bankr. S.D. Tex. 2012) (The Advisory Committee Notes to FED. R. CIV. P. 60(b) explain that "interlocutory judgments are not brought within the restrictions of this rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").
[18] *See* Bankr. ECF No. 1.

### III.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment, "identifying each claim or defense—*or the part of each claim* or defense—on which summary judgment is sought."[19]  Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.  Rule 56 states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  Defendants who do not, at trial, bear the ultimate burden of proof on the issues raised in their Motion may satisfy their burden of showing their entitlement to summary judgment by pointing out to the Court the absence of evidence sufficient to sustain Plaintiff's evidentiary burden as to a required element of Plaintiff's claims.[21]  This does not require Defendants to negate the elements of the Plaintiff's case—demonstrating the absence of evidence suffices.[22]  Defendants, therefore,  are entitled to summary judgment if they show "that there is no genuine dispute as to any material fact and [Defendants are] entitled to judgment as a matter of law."[23]  A material fact is one "that might affect the outcome of the suit under the governing law."[24]  A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for Plaintiff.[25]

In determining whether summary judgment is appropriate, a court is not to weigh evidence, assess its probative value, or resolve factual disputes,[26] but the facts must be reviewed with all "justifiable inferences" drawn in Plaintiff's favor.[27]  Nevertheless, factual controversies will be resolved in Plaintiff's favor "only when there is an actual controversy—that is, when both parties

---

[19] FED. R. CIV. P. 56(a) (emphasis added).
[20] FED. R. CIV. P. 56(a).
[21] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).
[22] *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).
[23] FED. R. CIV. P. 56(a).
[24] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998).
[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[26] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[27] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).

have submitted evidence of contradictory facts."[28]  If, however, the record could not lead a rational trier of fact to find for Plaintiff, summary judgment is appropriate.[29]  While the Court may consider other materials in the record, it need only consider those actually cited.[30]  Where the facts are undisputed and only questions of law exist, a court must apply the appropriate law to the facts to determine whether the movant is entitled to judgment as a matter of law.[31]

Plaintiff bears the burden of proof on its claims at trial.  Accordingly, Defendants must show the absence of a genuine issue of disputed fact that entitles them to judgment as a matter of law.[32]  If Defendants fail to meet this burden, the summary-judgment motion must be denied.[33]  If successful, the burden shifts to Plaintiff to "identify specific evidence in the summary judgment record demonstrating that there is a genuine dispute as to a material fact concerning the essential elements of its case for which it will bear the burden of proof at trial,"[34] and articulate precisely how that evidence supports Plaintiff's claim, to defeat summary judgment.[35]  The burden to show that there is a genuine dispute of material fact is on the party who seeks to avoid summary judgment.[36]  Therefore, if Plaintiff fails to meet this burden, summary judgment in Defendants' favor is appropriate.[37]

## IV.  Analysis

---

[28] *Laughlin v. Olszewski,* 102 F.3d 190, 193 (5th Cir.1996).

[29] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[30] *Id.* (citing FED. R. CIV. P. 56(c)(3)).

[31] Sheline v. Dun & Bradstreet Corp., 948 F.2d 174, 176 (5th Cir. 1991); *see* Barnes v. Allstate Ins. Co., 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").

[32] *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

[33] *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[34] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).

[35] *See Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 869 (S.D. Tex. 2019) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).[29]

[36] *See Newman v. Guedry*, 703 F.3d 757, 766 (5th Cir. 2012).

[37] FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322–23; *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2011).

Defendants, in their Motion, assert that: (i) Plaintiff lacks standing to prosecute Causes I–V against Defendants because they are derivative claims which belong to Debtor; (ii) CTA assumed obligations well in excess of assets received, resulting in the failure of Plaintiff's fraudulent transfer claims Causes I–III; and (iii) Cause VI is moot because Plaintiff has already asserted a trust fund violation in its proof of claim filed in Debtor's main bankruptcy case.[38]   The Court will address each in turn.

### A.  Undisputed Facts

The undisputed facts are as follows:

1. MLN Company is a Texas-based mechanical contractor. MLN Company provided labor and materials to Clear The Air pursuant to written agreements entered into on November 28, 2016, and February 2, 2017, and in connection with the construction of the Jackson Electric Cooperative project located at Highway 35 & Showboat Road, Bay City, Texas 77414 ("*Project*"). Clear The Air had a contract with Paric Corporation ("*Paric*") for the Project.[39]

2. In 2018, Clear The Air encountered significant financial challenges that largely stemmed from expanding too quickly, purchasing another air conditioning business that was of little value, and suffering from commercial customers slow paying or refusing to pay for work and equipment provided. As a result, it explored various reorganization approaches. In connection with exploring those options, it sought and obtained a valuation opinion from Calvin Martin, CPA ("*Martin*").[40] Martin determined that the value of Clear the Air as of April 2018 was $20,400. As stated in his expert report:

   After reviewing all requested information and documents and applying the appropriate valuation analysis, it became readily apparent that commonly accepted valuation methodologies would result in a zero value for Clear The Air, LLC. Given the fact that the company could not be considered a "going concern", the most suitable method was to express a value after liquidation. If all tangible assets of the company were liquidated and used to pay secured and non-secured creditors, the only remaining value would likely be the customer base names and contact information. After discussion with the client as to their recommendation of the value of the customers names and contact information, I determined the value as stated in our valuation report.[41]

3. Confronted with the choice of simply closing its doors or the significant expense of filing a

---

[38] ECF No. 46, at 3.
[39] ECF No. 28 at 2, ¶ 8.
[40] ECF No. 46, Ex. 4 at 1, ¶ 3.
[41] *Id.*, Ex. 1.

chapter 11 bankruptcy, Clear The Air attempted to effect an out-of-court reorganization whereby some of its tangible, and the majority of its intangible, assets were sold to CTA.[42]

4. CTA was formed on December 10, 2018 and is owned by Ms. Stom who is the wife of Jason Stom ("*Mr. Stom*"), the owner of Clear The Air. Ms. Stom used her money and money from a family member (a gift) as the initial capital for CTA.[43]

5. On February 22, 2019, Clear The Air entered into an Asset Purchase Agreement ("*Agreement*") with CTA and certain assets were sold and debts were assumed.[44]

6. Under the terms of the Agreement, Clear The Air transferred approximately $27,400 in assets to CTA and CTA assumed Clear The Air's obligations of at least $170,000. Clear The Air retained all of its accounts receivable and cash after the transfer ("*Transfer*").[45]

7. Clear The Air ceased operations in connection with the sale. In connection with ceasing operations, Clear The Air paid Ms. Stom $30,506.66 in back pay.[46]

8. Because he personally guaranteed many of Clear The Air's debts, Mr. Stom filed a personal bankruptcy on April 23, 2019. The fact that Clear The Air sold substantially all its assets to CTA was disclosed in Mr. Stom's schedules and Mr. Stom received a discharge on August 6, 2019.[47]

### B. Plaintiff has standing to prosecute derivative claims under Causes I–V

Defendants assert that Plaintiff lacks standing to pursue Causes I–V because such derivative claims belong to the Debtor's bankruptcy estate. It is fundamental that derivative claims are property of the debtor's estate.[48] In determining whether a claim is derivative, courts look to state law to determine if the debtor could have raised the claim at the commencement of its case.[49] If the claim could have been raised, the claim is derivative and belongs to the estate.[50] If

---

[42] ECF No. 45, Ex. 4 at 2, ¶ 4.
[43] *Id.*, Ex 5 at 1, ¶ 3.
[44] *Id.*
[45] *Id.* at 4, ¶ 4; Ex. 2.
[46] *Id.*, Ex. 3, Ex. 4 at 2, ¶ 6, Ex. 5 at 2, ¶ 4.
[47] *Id.*, Ex. 4 at 2, ¶ 10.
[48] *In re Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir. 1994).
[49] *Id.*; *see In re Mortgage America Corp.,* 714 F.2d 1266, 1276 (5th Cir. 1983).
[50] *In re Dexterity Surgical, Inc.,* 365 B.R. 690, 695 (Bankr. S.D. Tex. 2007) ("[I]f the claims are derivative to the corporation—the claims will belong to the estate.").

a claim belongs to the estate, the trustee has exclusive standing to assert it.[51]  However, creditors like Plaintiff have a qualified right to initiate suit on behalf of the bankruptcy estate if certain considerations are met.  The Fifth Circuit has held that a creditor may bring suit on behalf of the bankruptcy estate for fraudulent transfers if: (1) the creditor's claim is colorable; (2) the debtor-in-possession unjustifiably refused to pursue the claim; and (3) that the creditor received leave to sue from the bankruptcy court before pursuing the fraudulent transfer claims.[52]  The Court noted that these considerations are "not necessarily a formalistic checklist" and the considerations are by no means exhaustive.[53]  This Court will evaluate Plaintiff's derivative standing in light of each consideration.

For a creditor's claim to be colorable, it must have a possibility of success.[54]  Here, Defendants' Motion to Dismiss was previously denied where this Court found that Plaintiff's claim met the plausibility standard set forth under *Twombly* and *Iqbal*.[55]  As such, this Court previously determined that Plaintiff's claims contain more than a sheer possibility that Defendants acted unlawfully in surviving the motion to dismiss stage, and the first consideration is satisfied.  Next, in determining whether a debtor-in-possession's refusal was unjustified, the Court "must look to whether the interests of creditors were left unprotected as a result.  As the interests of creditors are imperiled where valid and profitable state law causes of action are neglected by the debtor-in-

---

[51] *Schertz-Cibolo—Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Trust),* 24 F.3d 1281, 1285 (5th Cir. 1994); *Noram Resources, Inc. v. Peterson (In re Noram Resources, Inc.)*, 2012 WL 2571154, *5 (Bankr. S.D. Tex. July 2, 2012) ("If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate.").

[52] *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988); *see also In re SI Restructuring Inc.,* 714 F.3d 860 (5th Cir. 2013).

[53] *Id.*

[54] *See In re McConnell*, 122 B.R. 41, 44 (Bankr. S.D. Tex. 1989).

[55] ECF No. 26; *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

possession, the unjustified refusal calculus will generally amount to little more than a cost-benefit analysis."[56]

With respect to the second factor, it is uncontroverted that Plaintiff served a demand on Debtor, to pursue fraudulent transfer claims against CTA and Ms. Stom.[57]  The correspondence included a formal demand to Debtor to pursue fraudulent transfer claims.[58]  Clear The Air puts forward no evidence that it responded to Plaintiff's demand or pursued any fraudulent transfer claims against CTA or Ms. Stom.  As such, the second consideration is satisfied.  Lastly, with respect to the third factor, and as stated in Plaintiff's Response, this Court earlier granted Plaintiff leave to file an amended complaint based on a finding that Plaintiff sought and obtained leave from this Court.[59]  As such, the third consideration is satisfied.   Accordingly, summary judgment is denied as to these three factors.

Despite satisfying the three considerations for derivative standing, one material issue remains—a fourth factor.  When pursuing derivative claims, it is vital that a creditor bring suit *on behalf of the bankruptcy estate*.[60]  Defendants assert that despite being granted leave to amend its Second Amended Complaint, Plaintiff nevertheless continues to pursue claims on its own behalf rather than on behalf of the estate.  In support of their position, Defendants direct the Court to the Plaintiff's Second Amended Complaint.  Specifically, in the prayer of the Second Amended Complaint, Plaintiff uses the language "[g]rant MLN company" followed by the five requests for relief.[61]  Defendants argue, "as reflected in this Prayer, [Plaintiff] only seeks recovery of damages

---

[56] *In re Cooper*, 405 B.R. 801, 810 (Bankr. N.D. Tex. 2009).
[57] ECF No. 48-3.
[58] *Id.*
[59] ECF No. 26; ECF No. 48 at 6, ¶ 14.
[60] *See Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d at 247; *see also In re SI Restructuring Inc.*, 714 F.3d at 860.
[61] ECF No. 28.

for itself.  It makes no reference to recovery on behalf of the bankruptcy estate."[62]  In light of the Court's prior ruling and Defendants specific reference to the absence of language referencing a recovery on behalf of the bankruptcy estate, Defendants have met their initial burden which now shifts to the Plaintiff to identify specific record evidence and articulate precisely how that evidence supports Plaintiff's claim for standing, to defeat summary judgment.

In its response, Plaintiff admits that it received leave of Court to pursue claims on behalf of the bankruptcy estate.[63]  In Plaintiff's Second Amended Complaint, Plaintiff added a footnote at the outset of the memo stating "[Plaintiff] brings these claims on behalf of itself against all of the defendants, and as a representative of the bankruptcy estate against Dawn Stom and CTA HVAC, LLC as allowed by the Court's granting of [Plaintiff]'s Motion for Leave (Doc.'s 20 and 26), which is incorporated by reference herein."[64]  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor."[65]  "Credibility determinations have no place in summary judgment proceedings because a nonmovant[']s summary judgment evidence must be taken as true."[66]  Plaintiff reiterated at the Hearing that the claims are being pursued on behalf of the estate, as demonstrated in the footnote of the Second Amended Complaint.[67]  Accordingly, and viewing the summary judgment evidence in the light most favorable to Plaintiff, summary judgment is denied as to the fourth factor.

**C.  A genuine dispute as to material facts remains as to whether Debtor received reasonably equivalent value under § 548(a)(1)(B)**

---

[62] ECF No. 46.

[63] ECF No. 48 at 17.

[64] ECF No. 28 at 1.

[65] *Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853 at 869 (internal citations omitted).

[66] *Id.* (citing *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019)).

[67] Min. Entry 06/03/2021 (As stated by Plaintiff, MLN Company as defined in footnote 1 of the Second Amended Complaint is to be carried over to the prayer).

Plaintiff's Second Amended Complaint prays for actual damages in the amount of $60,775.69 against Defendants.[68]  This amount stems from a $60,775.69 judgment obtained by Plaintiff against Clear The Air based on an agreed arbitration award.[69]  Plaintiff contends that while Plaintiff was pursuing its claims against Clear The Air in arbitration, and after Clear The Air came into possession of Plaintiff's property, Clear The Air conspired with CTA to transfer trust funds and other property from Clear The Air to CTA, thereby potentially removing it from the reach of Clear The Air's creditors.[70]  Specifically, with respect to Count II, Plaintiff alleges that Clear The Air directed and caused a transfer of at least $54,024.00 in funds to CTA and Ms. Stom within the two-year period prior to the Petition Date, and that Clear The Air also caused the transfers of certain personal property to CTA, including vehicles, tools, inventory, furniture, and electronics.[71]  In return, asserts Plaintiff, Clear The Air received less than a reasonable equivalent value in exchange for the transfers, and that both before and after the transfers, Clear The Air was insolvent or unable to pay its debts as they became due.

A fraudulent transfer under § 548(a)(1)(B) entitles the trustee to avoid any transfer from the debtor if the following elements are established: (1) that the transfer was of an interest of the debtor in property; (2) that the Debtor made the transfer on or within two years before the petition date; (3) that the Debtor received *less than a reasonably equivalent value* in exchange for the transfer; and (4) that the Debtor was insolvent on the date that the transfer was made.[72]  "Reasonably equivalent value" means that the debtor has received value that is substantially comparable to the worth of the transferred property.[73]  To measure reasonably equivalent value, for purposes

---

[68] ECF No. 28 at 10.
[69] ECF No. 48-2; *see* ECF No. 28.
[70] ECF No. 28.
[71] *Id.* at 6.
[72] 11 U.S.C. § 548(a)(1)(B) (emphasis added).
[73] *Id.*

of the fraudulent transfer section of the Bankruptcy Code, courts judge the consideration given for a transfer from the standpoint of creditors: the proper focus is on the net effect of the transfers on the debtor's estate, and the funds available to the unsecured creditors.[74]  Plaintiff bears the burden of proof at trial in demonstrating that Debtor received less than reasonably equivalent value in exchange for the Transfer.  Defendants assert that Plaintiff's fraudulent transfer Cause II fails because CTA paid substantially more than "reasonably equivalent value" for assets it acquired from Clear The Air.

### i.   Whether CTA assumed obligations well in excess of assets received

In support of their Motion, Defendants assert that CTA assumed obligations well in excess of the assets it received in the Transfer.  Defendants attach the Asset Purchase Agreement between Clear The Air and CTA.[75]  Defendants argue that under the terms of the Agreement, CTA agreed to pay approximately $72,000 of Clear the Air's debt plus its chapter 11 attorney's fees.[76]  Specifically, under the Agreement, Defendants demonstrate the following:

*Assets acquired by CTA*

Trucks with a value of .........................................$14,999.00
Trailers with a value of ........................................... $500.00
Forklift with a value of ...........................................$500.00
Sheetmetal Equipment with a value of ................$1,700.00
Tools with a value of ..........................................$3,025.00
Misc. Inventory with a value of ...........................$4,500.00
Furniture with a value of ........................................$325.00
Electronics with a value of ..................................$1,850.00
Total Assets Acquired ....................................... **$27,399.00**[77]

*Obligations assumed by CTA*

Amounts due to Specific Vendors of .................$61,825.02

---

[74] *In re TransTexas Gas Corp.*, 597 F.3d 298 (5th Cir. 2010).
[75] ECF No. 46-2.
[76] *Id.*
[77] *Id.* (the amounts are compiled from amounts listed in the Agreement).

Customer Service Agreements of ......................$75,783.14
Customer Deposits of .........................................$30,824.86
Warranty Claims .................................................. Unknown
Total specified obligations assumed of ............ **$168,433.02**[78]

Additionally, Defendants point out that under the Agreement CTA agreed to pay personal property taxes, sales taxes, and assumed consumer or retail warranty obligations of Clear The Air.[79]  Therefore, Defendants contend that CTA paid substantially more than "reasonably equivalent value" for the assets it acquired and as a result, Plaintiff's fraudulent transfer claims fail.

Nevertheless, genuine factual disputes remain that are material to the outcome of the litigation.  Under the Agreement, "Clear the Air LLC Warranties" are given an "unknown" value without any indication as to what the potential liability could be.[80]  While Defendants explained how this "unknown" figure applies to Debtor's business at the Hearing, there is no evidence demonstrating that this figure is solely a liability without a corresponding asset component.[81]  Next, there is no evidence demonstrating how the $75,783.14 in Customer Service Agreements and $30,824.86 in Customer Deposits were calculated in determining the amount of CTA's liability.[82]  The determination of this figure is crucial in considering whether there was a reasonably equivalent value exchange.  Further, the Agreement fails to assign a dollar value to the property taxes and sales taxes CTA was supposed to pay.[83]  Lastly, Defendants do not explain why the terms "bankruptcy" or "chapter 11" are not contained in the Agreement but yet reference is made in the Motion that the chapter 11 bankruptcy was to be used as a vehicle to facilitate implementation of

---

[78] *Id.*
[79] *Id.*
[80] ECF No. 46-2 at 7.
[81] Min. Entry 06/03/2021.
[82] *Id.*
[83] ECF No. 46-2.

the Agreement.[84]   Taken together, these missing facts are material in determining whether Clear

The Air received "reasonably equivalent value" when it transferred its assets to CTA in exchange

for entering into the Agreement.   Accordingly, Defendants' Motion for Summary Judgment is

denied on this issue based on the aforementioned grounds.

### ii.   Whether Debtor's proposed chapter 11 plan of reorganization provides more than what Plaintiff could potentially recover as a result of its complaint

Defendants contend that Plaintiff cannot establish any greater right of recovery on behalf

of the bankruptcy estate than has been proposed by Clear The Air and CTA in settlement of such

claims.[85]   Defendants point out that as part of Clear The Air's Plan, CTA agreed to (i) fund the Plan

by paying $50,000 to Clear The Air's unsecured creditors, (ii) pay certain administrative expenses of

the case, (iii) pay any amount due on the Texas Comptroller and Texas Workforce Commission claims,

and (iv) assume the payment obligation to Ally Financial (a secured creditor).[86]   Defendants assert

that in total, CTA agreed to pay $72,000.[87]   However, Defendants point out that Plaintiff seeks

$60,775.69 in actual damages in its Second Amended Complaint.   Thus, according to Defendants,

the amount sought in this adversary proceeding is less than the amount agreed to by CTA prior to

Plaintiff prosecuting this case.   Defendants conclude their argument by saying that "CTA further

agreed to pay personal property taxes, sales taxes and assumed consumer or retail warranty obli-

gations of unknown amounts and given that both CTA and Ms. Stom have asserted defenses to the

fraudulent transfer and preference claims, the resolution was reasonable and far exceeded what

could be recovered in this Adversary."[88]   Defendants' argument suffers from the same fatal flaws

---

[84] *See* ECF No. 46 at 4 ("Confronted with the choice of simply closing its doors or the significant expense of filing a Chapter 11 bankruptcy, Clear the Air attempted to effect an out-of-court reorganization whereby some of its tangible, and the majority of its intangible, assets were sold to CTA.").
[85] ECF No. 46.
[86] Debtor's Combined Plan and Disclosure Statement submitted by Clear The Air, LLC, Debtor-in-Possession, Case No. 19-32939, Bankr. ECF No. 29, 4–6.
[87] ECF No. 46.
[88] *Id.*

pointed out supra.  Accordingly, Defendants have not met their initial burden and summary judgment is denied as to Plaintiff's Cause II, § 548(a)(1)(B) claim.

### D.  Plaintiff's Cause VI trust fund violation against Debtor Clear The Air is not moot

Defendants assert that Cause VI solely against Clear The Air is moot because Plaintiff has already asserted a trust fund violation in its proof of claim filed in Clear The Air's main bankruptcy case.  Plaintiff bears the burden of proof at trial in demonstrating that Clear The Air misapplied trust funds by knowingly, intentionally, and with the intent to defraud, retaining, using, distributing or otherwise diverting these trust funds and refusing to pay them to Plaintiff.[89]  Defendants, therefore, must show the absence of a genuine dispute as to any material fact regarding one or more material elements of Plaintiff's claim that entitles Defendants to judgment as a matter of law.  If successful, the burden shifts to Plaintiff to identify specific record evidence and articulate precisely how that evidence supports Plaintiff's claims, to defeat summary judgment.[90]

Clear The Air contends that Plaintiff miscomprehends the import of the construction trust fund statute and  argues that the trust fund statute[91] does not give Plaintiff a claim to specific funds held by Clear The Air.[92]  The construction trust fund statute, continues Clear The Air, can give Plaintiff a claim against Clear The Air and a personal guarantee by the contractor responsible party, however, it does not create a fiduciary duty or a claim for specific assets.[93]  Clear The Air points out that Plaintiff filed a proof of claim in Clear The Air's bankruptcy case for $60,775.69 and notes that the basis for the claim is "judgment per agreed arb. award + fraudulent transfer violations."

---

[89] *See* ECF No. 28 at 9.
[90] *See Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 869 (S.D. Tex. 2019) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).
[91] Tex. Prop. Code Ann. § 162 (West).
[92] ECF No. 46.
[93] *In re Tran*, 151 F.3d 339, 344 (5th Cir. 1998) ("In short, the [construction trust fund] statute does not create red, blue, and yellow dollars each of which can only be used for red, blue, or yellow construction project."); *See In Re Hann*, 544 B.R. 326 (Bankr. S.D. Tex. 2016).

Clear The Air argues that since Plaintiff's proof of claim already incorporates its claims against Clear The Air, Plaintiff's Count IV is moot or at least inappropriately alleged in an adversary complaint unless and until Clear The Air objects to Plaintiff's proof of claim.

Here, Clear The Air cites to general propositions of law absent explanation as to how those propositions are applicable to the facts of this case. Upon a closer reading of *In re Hann*, the court stated that the construction trust fund statute provided "an affirmative defense when the trust funds that were not paid to the claimant were used to pay the trustee's actual expenses directly to the construction of the improvement."[94] Next, in *Matter of Tran*, the Fifth Circuit set forth that the state statute did not make fiduciaries out of all contractors, but rather made fiduciaries of only those contractors who diverted funds with the intent to defraud.[95] As such, Clear The Air's legal argument misses the mark. The notion that the construction trust fund statute cited by Plaintiff does not create a fiduciary duty or a claim for specific assets is an oversimplification of the case law. The case law does not make a blanket statement that the construction trust fund statute may not create a fiduciary duty or claim for specific assets. Rather, the case law expressly uses the construction trust fund statute to determine whether a fiduciary relationship exists.[96]

Clear The Air failed to provide any evidence as to how the funds of the project were paid or evidence of the scienter with which such transfers was made. Clear The Air's only nod to any evidence was a reference to Plaintiff's proof of claim in the main bankruptcy case. However, despite the proof of claim filed in Clear The Air's main bankruptcy, Plaintiff is appropriately asserting a live cause of action under Rule 7001 to which Clear The Air must respond. As such,

---

[94] *In re Hann*, 544 B.R. at 333.
[95] *In re Tran*, 151 F.3d at 344.
[96] *In re Nicholas*, 956 F.2d 110, 111 (5th Cir. 1992) ("This court must decide whether the Texas Construction Trust Fund Statute, Tex. Property Code § 162.001 *et seq.* (Vernon Supp.1991) created a fiduciary duty between Nicholas and Coburn as sub-contractor and, if so, whether Nicholas acted in fraud or defalcation of that duty.").

since Clear The Air failed to show the absence of a genuine dispute as to any material fact regarding one or more material elements of Plaintiff's Cause VI, Defendants' Motion for Summary Judgment with respect to Cause VI is denied.

### V.  Conclusion

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED June 22, 2021

Eduardo Rodriguez
United States Bankruptcy Judge